**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**DEAIREN WILLIAMS**                                        **CIVIL ACTION**

**VERSUS**                                                          **NO.  16-6902**

**JASON KENT, WARDEN**                                   **SECTION "F"(4)**

**REPORT AND RECOMMENDATION**

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.      Factual and Procedural Background

The petitioner, Deairen Williams ("Williams"), is a convicted inmate incarcerated in the Dixon Correctional Institute in Jackson, Louisiana.[2]  On March 8, 2010, Williams and two co-defendants, Ashton D. Chopin and Howard Clofer, were charged in a four count Bill of Information in Jefferson Parish.[3]  Clofer was charged in count one with the attempted first degree murder of William David Ivy during an attempted armed robbery.  In count two, Williams and Chopin were charged with the attempted armed robbery of William David Ivy.  Williams, Clofer, and Chopin were charged with the armed robbery of Don McAllister in count three and the armed robbery of

---

[1] Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] Rec. Doc. No. 1.

[3] St. Rec. Vol. 1 of 7, Indictment, 8/27/09.

Bernadette McAllister in count four.[4]  The State later amended the Bill of Information to enter a nolle prosequi of count one against Clofer and to include Clofer as an accused in count two.[5]

The record reflects that,[6] around 9:00 p.m. on February 6, 2010, three young black males approached William David Ivy in the driveway of his home and attempted to rob him.  One of the three men stood in the street as a "lookout," another stood in the yard and waived a gun, and the third man approached Ivy, pointed a gun to his head, and said, "[g]ive me what you got."  Ivy responded that he did not have anything to give.  After again demanding money and receiving the same response, the gunman struck Ivy in the head with the gun, bringing him down to one knee.  The gunman then demanded Ivy's car keys.  After a neighbor's dog made noise, the three men fled without taking anything.  As the men ran off, Ivy looked over the hood of his car.  One of the three men then fired a shot in Ivy's direction, and Ivy ducked down behind his car until the men were out of sight.  Ivy later identified Clofer and Williams from photographic lineups as the two men who approached him with guns and identified Clofer as the man who struck him in the head.

Shortly after 9:00 p.m., Don and Bernadette McAllister had just returned home from a shopping trip, and Mrs. McAllister remained in the car to gather her things while Mr. McAllister exited the car to bring a package inside their home.  As he attempted to open his front door, Mr. McAllister noticed three black males walking in the street about seventy-five feet from his house.  Seconds later, he heard footsteps rapidly approaching and then heard a male voice shout, "[b]itch, give me your money."  Mr. McAllister turned around and saw two men with guns pointed at him,

---

[4]St. Rec. Vol. 1 of 10, Bill of Information, 3/8/10.

[5]St. Rec. Vol. 6 of 10, Bill of Information, 3/8/10 (amendment dated 1/10/11).

[6]The facts were taken from the published opinion of the Louisiana Fifth Circuit Court of Appeal on direct appeal.  *State v. Williams*, 119 So.3d 228, 230-32 (La. App. 4th Cir. 2013); St. Rec. Vol. 7 of 10, 5th Cir. Opinion, 12-KA-687, 5/16/13.

and a third standing about fifteen feet away as a lookout. He gave one man his wallet and cell phone. The other gunman then stepped up closer to him, put the gun closer to his face, and said, "[l]et's jack the car." Mr. McAllister gave the men a set of keys but told them he needed to get his wife out of the car. Mr. McAllister walked to the car and told Mrs. McAllister to get out and to give the men her purse. One of the men took the purse from her and then she and Mr. McAllister quickly went inside and called 9-1-1. Mr. McAllister watched from inside as the three men got into his car, but the men were unable to start it. Mr. McAllister apparently had given them the wrong set of keys. The three men fled the scene on foot toward Canyon Street. The McAllisters were not able to make any positive identifications when presented with photographic lineups.

Deputy Drew Weidenbacher of the Jefferson Parish Sheriff's Office responded to a call regarding reports of two armed robberies occurring minutes apart. While responding to the call, Weidenbacher noticed three individuals fitting the subjects' general descriptions walking together down Canyon Street near Ames Boulevard. Weidenbacher stopped his patrol unit, exited the vehicle, and announced his presence to the three individuals, and they took off running. After running together for a block or two, one individual separated from the others and began running along a canal bank. Weidenbacher chased and apprehended that individual, later identified as Chopin. This led to the arrest of Williams and Clofer.

Williams was tried before a jury on April 19 and 20, 2011, and found guilty as charged on each count.[7] The Trial Court sentenced Williams on May 9, 2011, to serve 25 years in prison at hard labor on count two, the attempted armed robbery of Ivy, and 50 years in prison at hard labor

---

[7]St. Rec. Vol. 1 of 10, Trial Minutes, 4/19/11; Trial Minutes, 4/20/11; Jury Verdict, 4/20/11; St. Rec. Vol. 2 of 10, Trial Transcript, 4/19/11; St. Rec. Vol. 3 of 7, Trial Transcript (continued), 4/19/11; Trial Transcript, 4/20/11; St. Rec. Vol. 4 of 10, Trial Transcript (continued), 4/20/11. The record does not include complete information about the outcomes of the charges against Clofer and Chopin, and that is not relevant to the resolution of Williams's petition.

for each of counts three and four, the armed robberies of the McAllisters.[8]  The Court ordered that the sentences run concurrently and to be served without benefit of parole, probation, or suspension of sentence.[9]  The Court later adjudicated Williams to be a second felony offender based on the State's multiple offender bill, and resentenced him as a multiple offender on count three to serve fifty years in prison without benefit of parole, probation, or suspension of sentence.[10]

While the appeal was under review, Williams filed two identical applications for post-conviction relief in the state trial court seeking leave to file an out-of-time appeal from his conviction.[11]  The Trial Court denied the applications as moot on October 16, 2012, because of the pending appeal.[12]

On direct appeal to the Louisiana Fifth Circuit Court of Appeal, Williams's appointed counsel asserted two errors:[13] (1) the state trial court erred when it denied Williams's motion for mistrial after he was seen by jurors being escorted into a restricted area not accessible to the public and jury; and (2) the Trial Court imposed an excessive and cruel and unusual sentence.  Williams thereafter filed pro se a supplemental brief asserting that the verdict was contrary to the law and argument where the jury's verdict was not supported by sufficient evidence of guilt.[14]

---

[8]St. Rec. Vol. 1 of 10, Sentencing Minutes, 5/9/11; St. Rec. Vol. 4 of 10, Sentencing Transcript, 5/9/11.

[9]*Id.*

[10]St. Rec. Vol. 1 of 10, Multiple Bill Sentencing Minutes, 11/18/11; Trial Court Judgment and Reasons, 11/18/11; Multiple Bill, 7/26/11; St. Rec. Vol. 5 of 10, Multiple Bill Sentencing Transcript, 11/18/11.

[11]St. Rec. Vol. 7 of 10, Application for Post-Conviction Relief, 9/13/12 (dated 9/6/12); Application for Post-Conviction Relief (2), 9/13/12 (dated 9/6/12); Cover Letter, 9/13/12 (dated 9/6/12).

[12]St. Rec. Vol. 7 of 10, Trial Court Order, 10/16/12.

[13]St. Rec. Vol. 5 of 10, Appeal Brief, 12-KA-0687, 11/14/12.

[14]St. Rec. Vol. 5 of 10, Pro Se Supplemental Brief, 3/8/12.

On May 16, 2013, the Louisiana Fifth Circuit affirmed Williams's conviction and sentence finding no merit in the first issue and the pro se asserted issue.[15] The Court also found that the issue challenging the enhanced multiple offender sentence was not properly or timely asserted and declined to consider it.[16] The Court also remanded the matter for the Trial Court to correct clerical errors in its sentencing minutes and commitment order, and the Trial Court complied on May 20, 2013.[17]

The Louisiana Supreme Court denied Williams's subsequent writ application without stated reasons on December 2, 2013.[18] Williams's conviction was final under federal law ninety (90) days later, on Monday, March 3, 2014,[19] when he did not file a writ application with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (time for filing for certiorari with the United States Supreme Court is included in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. Sup. Ct. Rule 13(1).

On September 5, 2014, Williams signed and submitted to the state trial court an application for post-conviction relief in which he asserted the following grounds for relief:[20] (1)(a) counsel was ineffective (i) for failure to investigate, interview, and subpoena critical evidence, (ii) for failure to adequately present the defense of actual innocence and petitioner is actually innocent, (iii) for failing to file a pretrial motion for severance of offenses, and (iv) for failing to file a motion

---

[15]*Williams*, 119 So.3d at 228; St. Rec. Vol. 7 of 10, 5th Cir. Opinion, 12-KA-687, 5/16/13.

[16]*Id.*

[17]*See* St. Rec. Vol. 7 of 10, Corrected Minute Entry, 5/20/13; Corrected Commitment Order, 5/20/13.

[18]*State v. Williams*, 126 So.3d 500 (La. 2013); St. Rec. Vol. 10 of 10, La. S. Ct. Order, 2013-KO-1335, 12/2/13; La. S. Ct Writ Application, 13-KO-1335, 6/12/13 (dated 5/28/13).

[19]The last day fell on Sunday, March 2, 2014, leaving the final day of the period to fall on the next business day, Monday, March 3, 2014. *See* La. Code Crim. P. art. 13; Fed. R. Civ. P. 6(a)(1)(C).

[20]St. Rec. Vol. 7 of 10, Application for Post-Conviction Relief, 9/9/14 (dated 9/5/14).

to reconsider the sentence on the basis that the Trial Court did not articulate reasons for the sentence pursuant to La. Code Crim. P. art. 894.1, and (b) he is entitled to an evidentiary hearing on the ineffective assistance of counsel claims; (2) his continued incarceration violated due process where his counsel committed errors throughout the case in chief; and (3) the cumulative effect of the constitutional errors violated due process and equal protection. After receiving a response from the State, the Trial Court denied the application on January 13, 2015, finding no cognizable claim of actual innocence and no merit in the remaining claims.[21]

The Louisiana Fifth Circuit denied Williams's related writ application on May 7, 2015, finding no error in the Trial Court's ruling and no merit in the claims asserted.[22] The Louisiana Supreme Court denied his subsequent writ application on April 22, 2016, for failure to show that he received ineffective assistance of counsel under the standards set forth in *Strickland v. Washington*, 466 U.S. 688 (1984), and referenced by attachment the state trial court's reasons.[23]

## II.     Federal Habeas Petition

After correction of deficiencies, the clerk of this Court filed Williams's petition for federal habeas corpus relief in which he asserts four grounds for relief:[24] (1) the state court of appeal erred in interpreting and applying state law because it was error to deny the motion for mistrial after he was seen by jurors being escorted into a restricted area not accessible to the public and jury; (2) the state court of appeal erred in interpreting and applying state law by allowing the state trial court

---

[21]St. Rec. Vol. 7 of 10, Trial Court Order, 1/13/15; State's Response, 11/14/14; Trial Court Order, 10/15/14.

[22]St. Rec. Vol. 10 of 10, 5th Cir. Order, 15-KH-202, 5/7/15; 5th Cir. Writ Application, 15-KH-202, 3/31/15 (dated 3/24/15).

[23]*State ex rel. Williams v. State*, 195 So.3d 433 (La. 2016); St. Rec. Vol. 10 of 10, La. S. Ct. Order, 2015-KH-1073, 4/22/16; La. S. Ct. Writ Application, 15-KH-1073, 6/2/15 (dated 5/28/15); St. Rec. Vol. 7 of 10, La. S. Ct. Letter, 2015-KH-1073, 6/2/15.

[24]Rec. Doc. No. 1.

to impose an excessive and cruel and unusual sentence; (3) the state court of appeal erred in interpreting and applying state law where the jury's verdict was contrary to law and argument; (4) the state court of appeal erred in interpreting and applying state law where the jury's verdict was not supported by sufficient evidence of guilt; (5)(a) counsel was ineffective (i) for failure to investigate, interview, and subpoena critical evidence, (ii) for failure to adequately present the defense of actual innocence and petitioner is actually innocent, (iii) for failing to file a pretrial motion for severance of offenses, and (iv) for failing to file a motion to reconsider the sentence on the basis that the Trial Court did not articulate reasons for the sentence pursuant to La. Code Crim. P. art. 894.1, and (b) he is entitled to an evidentiary hearing on the ineffective assistance of counsel claims; (6) his continued incarceration violated due process where his counsel committed errors throughout the case in chief; and (7) the cumulative effect of the constitutional errors resulting from counsel's performance violated due process and equal protection. After receiving a response from the State, the Trial Court denied the application on January 13, 2015, finding that there is no cognizable claim of actual innocence and the remaining claims were without merit.

The State filed a response in opposition to the petition conceding that Williams's petition was timely filed and state court review was exhausted.[25] The State asserts that Williams has failed to establish that the denial of relief on each of his claims was contrary to federal law.

Williams replied to the State's opposition requesting that the Court find merit in his claims and afford him an evidentiary hearing before dismissing his petition.

---

[25]Rec. Doc. No. 9.

## III.    General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[26] applies to this petition, which is deemed filed in this Court under the federal mailbox rule on May 20, 2016.[27]   The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and the claims must not be in "procedural default." *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes that Williams's petition was timely filed and asserts that review of his claims was exhausted in the state courts.  However, the clear ruling of the state appellate court was that Williams did not properly or timely appeal the excessive sentence claim.  The Court directly held that the notice of appeal did not encompass the multiple offender proceeding and the sentence became final when he did not timely appeal it.  The well-established test for exhaustion requires that the substance of the federal habeas claim be fairly presented to the highest state court in a procedurally proper manner. *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) (citing

---

[26]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[27]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court docketed Williams's deficient petition on May 23, 2016, and it was deemed filed with the Court on June 21, 2016, when the filing fee was finally received.  Williams dated his signature on the form petition on May 20, 2016, which is the earliest date appearing in the record on which he could have presented the pleadings to prison officials for mailing to a federal court.  The fact that he later paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition. See *Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002) (mailbox rule applies even if the filing fee is not paid at time of mailing) (citing *Spotville*, 149 F.3d at 376).

*Picard v. Connor*, 404 U.S. 270, 275-78 (1971)). Williams's, therefore, failed to properly present his claim to any state court to complete exhaustion. Nevertheless, because the claim has no merit, the Court can and will address it. 28 U.S.C. § 2254(b)(2).

## IV.    Standards for a Merits Review

### A.    Claims Reviewed by the State Courts

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the Court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA. The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485. The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, __ U.S. __, 134 S. Ct. 1697, 1706-

07 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'"  *White*, 134 S. Ct. at 1706 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)).

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485.  A state court's decision can involve an "unreasonable application" of federal law if it correctly identifies the governing rule but then applies it unreasonably to the facts.  *White*, 134 S. Ct. at 1706-07; *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law.  *See Williams*, 529 U.S. at 410. The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law.  *Id*.  "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'"  *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable."  *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002).  The burden is on the petitioner to show that the state court applied the

precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

**B.      Claims not Reviewed on the Merits by the State Courts**

The AEDPA's deferential standards of review apply only to claims adjudicated on the merits by the state courts. 28 U.S.C. § 2254(d); *Henderson v. Cockrell*, 333 F.3d 592, 597 (5th Cir. 2003). To the extent petitioner's claims were not considered by (or exhausted in) the state appellate courts, this Court's utilizes the pre-AEDPA *de novo* standards of review. *Id.*, at 598 (citing *Jones v. Jones*, 163 F.3d 285, 299-300 (5th Cir. 1998) (applying *de novo* standard of review to ineffective assistance of counsel claims that were raised in state court, but not adjudicated on the merits)); *see also*, *Carty v. Thaler*, 583 F.3d 244, 253 (5th Cir. 2009).

Therefore, the Court will consider *de novo* Williams claim of excessive sentence, which was not properly exhausted in the state courts. The Court recognizes and has utilized the appropriate standard for its review of each of petitioner's claims even if the standard is not specifically reiterated in the following sections of the report.

**V.      No Evidentiary Hearing Warranted in this Case**

Williams requests that he be given an evidentiary hearing to address his claims, specifically his claims of ineffective assistance of counsel and prejudice from the jury seeing him escorted by guards. The decision of whether to hold an evidentiary hearing is governed by 28 U.S.C. § 2254(e)(2). Under § 2254(e)(2), the district court may hold an evidentiary hearing only when the petitioner has shown that either the claims raised rely on a new, retroactive rule of constitutional law that was previously unavailable (§ 2254(e)(2)(A)(I)) or the claim relies on a factual basis that

could not have been previously discovered by an exercise of due diligence (§ 2254(e)(2)(A)(ii)); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. (§ 2254(e)(2)(B)).

The federal courts have resolved that an evidentiary hearing is not required "when the record is complete or the petitioner raised only legal claims that can be resolved without the taking of additional evidence." *Ellis v. Lynaugh*, 873 F.2d 830, 840 (5th Cir. 1989). Furthermore, the Supreme Court has made clear that a federal court's review is limited to the record that was before the state court that reviewed the merits of the petitioner's claims. *Cullen*, 563 U.S. at 181-82. Thus, the evidentiary hearing allowed under § 2254(e)(2) has no application when the federal court is reviewing questions of law and mixed questions of law and fact that were addressed on the merits in the state courts and are being considered under the deferential standards of § 2254(d)(1). *Cullen*, 563 U.S. at 185-86.

Williams has failed to establish any basis for an evidentiary hearing to be held in this case. As will be discussed, each of his claims of ineffective assistance of counsel and prejudice from the jury viewing present mixed questions of law and fact and were addressed on the merits in the state courts either on direct appeal or on post-conviction review.[28] For this reason, the claims are subject to the deferential review under § 2254(d)(1) and an evidentiary hearing is unavailable. *Cullen*, 563 U.S. at 185-86.

Even if § 2254(e)(2) could be applied, Williams's claims are not based on a new, retroactive constitutional law and the factual basis of the claims are established in the existing record. There is no need here to develop any facts through an evidentiary hearing. Williams also

---

[28]The Louisiana Fifth Circuit declined to consider the excessive sentence claim on direct appeal because it was not properly preserved for appeal. However, when Williams asserted the claim on post-conviction review, the state courts addressed the merits or lack thereof finding no error in the imposition of the mandatory minimum sentence.

has not demonstrated any constitutional error much less an error that would have altered the verdict or left <u>no</u> reasonable juror to convict him. He has not met any of the criterion necessary for an evidentiary hearing.

The record is sufficient to resolve the claims raised and Williams is not entitled to an evidentiary hearing under *Cullen* or § 2254(e)(2). His request for a hearing must be denied.

## VI.    Denial of the Motion for Mistrial (Claim No. 1)

Williams asserts that he was prejudiced when he may have been seen by two or three jurors when two guards escorted him from the courtroom into a restricted area of the courthouse. Williams argues that the jurors must have presumed from the restricted access signage that he was in custody in violation of the presumption of innocence. The State argues that Williams has failed to point to clearly established federal law that would support relief on this issue.

The record reflects that, at the end of the first day of trial, two or three of the jurors may have seen Williams being escorted by two deputies in to a restricted area of the courthouse.[29] The incident was reported by a deputy to Williams's defense attorney.[30] The next morning, defense counsel moved for a mistrial on the basis that this viewing violated Williams's right to a presumption of innocence.[31]

The state trial court made the following findings with regard to the incident and the facts were agreed upon by all counsel:[32]

> As deputies were transporting Mr. Williams from the courtroom across the hall, some fifteen/twenty feet (15/20'), across the hall, the Defendant was dressed in street clothing, was not handcuffed, was not shackled. As he was being walked

---

[29]St. Rec. Vol. 3 of 10, Trial Transcript, pp. 9-20, 4/20/11.

[30]*Id.*, p. 15.

[31]*Id.*, pp. 14-17.

[32]*Id.*, pp. 17-19.

across the hall, the jurors were being escorted out of my courtroom - - or I'm sorry - - out of my chambers, and it is possible that one (1), possibly two (2) or three (3), saw the Defendant being escorted out. And when I say "escorted", I say just in the presence of the guards. As I said, he was not being handled by the deputies, he was not in prison attire, he was not shackled, and he was not in handcuffs.

As soon as the deputies escorting the jury out of my chambers saw the Defendant and the deputies, the deputy escorting the jurors stopped the jurors and allowed the hall to be cleared.

The state trial court thereafter denied the motion for mistrial finding that the mere presence of security personnel was not prejudicial and there was no mandatory basis under state law for a mistrial under La. Code Crim. P. art. 770.[33] The Court did not find any substantial prejudice to Williams sufficient to deprive him of a fair trial as required for a mistrial under La. Code Crim. P. art. 775. The Court noted that the same deputies had been present in the courtroom throughout the trial and their presence did not create a prejudicial conduct, result in substantial prejudice, or deny Williams's a fair trial.

When the issue was asserted on direct appeal, the Louisiana Fifth Circuit found no error by the state trial court in denying the motion for mistrial under Louisiana law. The court resolved that Williams was not in prison garb or restraints and was not being handled by the deputies, who merely walked with him. The Court found no basis for prejudice or denial of a fair trial. This was the last reasoned opinion on the issue.

As an initial matter, Williams's arguments that the state courts erred in failing to grant a mistrial under state law do not involve consideration of any questions of federal or constitutional law, and review of such claims is not proper on habeas review. *See Lavernia v. Lynaugh*, 845 F.2d 493, 496 (5th Cir. 1988) (the failure to grant a mistrial is a matter of state law and not one of a constitutional dimension); *Haygood v. Quarterman*, 239 F. App'x 39, 42 (5th Cir. Jun.14, 2007)

---

[33] *Id.*, pp. 19-20.

(citing *Dickerson v. Guste*, 932 F.2d 1142, 1145 (5th Cir.1991)) (state court's denial of a motion for a new trial does not necessarily constitute a violation of a federal constitutional right). Federal habeas corpus review instead is limited to questions of federal constitutional dimension, and federal courts do not review alleged errors in the application of state law. A federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law." *Wilkerson v. Whitley*, 16 F.3d 64, 67 (5th Cir. 1994) (citation and quotation omitted); *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (federal habeas review does not lie for errors of state law). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *see also Molo v. Johnson*, 207 F.3d 773, 776 n.9 (5th Cir. 2000) ("Federal habeas review does not extend to state court conclusions of state law."); *Hogue v. Johnson*, 131 F.3d 466, 506 (5th Cir. 1997) (a disagreement as to state law is not cognizable on federal habeas review). Any alleged impropriety based on state law does not warrant federal habeas review or relief.

Instead, the state courts' denial of the motion for a mistrial justifies federal habeas corpus relief only if it was "error ... so extreme that it constitutes a denial of fundamental fairness under the Due Process Clause." *See Hernandez v. Dretke*, 125 F. App'x 528, 529 (5th Cir. 2005) (quoting *Bridge v. Lynaugh*, 838 F.2d 770, 772 (5th Cir. 1988)). In order to obtain federal habeas relief, Williams must show that the state trial court's ruling had a "substantial and injurious effect or influence in determining the jury's verdict." *See Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993). Williams must show that "there is more than a mere reasonable possibility that [the ruling] contributed to the verdict. It must have had a substantial effect or influence in determining the verdict." *Woods v. Johnson*, 75 F.3d 1017, 1026 (5th Cir. 1996).

The question of fundamental fairness at trial under the Due Process Clause presents a mixed question of law and fact. *Wilkerson v. Cain*, 233 F.3d 886, 890 (5th Cir. 2000); *Martinez-Perez v. Dretke*, 172 F. App'x 76, 80 (5th Cir. 2006) ("Whether the Marshal's presence prejudiced Perez's right to a fair trial is a mixed question of law and fact.) Thus, the court must determine whether the denial of relief by the state courts was contrary to or an unreasonable application of federal law.

The record demonstrates that the state courts' denial of Williams's motion did not constitute a denial of his due process rights, and that the denial had neither a substantial nor an injurious effect in determining the jury's verdict. The "right to a fair trial is a fundamental liberty secured by the Fourteenth Amendment" and the "presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice." *Estelle v. Williams*, 425 U.S. 501, 503 (1976). To secure a fair trial, "courts must carefully guard against dilution of the principle that guilt is to be established by probative evidence and beyond a reasonable doubt." *Id.*

However, not every factor during trial that singles out the accused renders the trial unfair or must be struck down. *Holbrook v. Flynn*, 475 U.S. 560, 567 (1986). "Recognizing that jurors are quite aware that the defendant appearing before them did not arrive there by choice or happenstance, we have never tried, and could never hope, to eliminate from trial procedures every reminder that the State has chosen to marshal its resources against a defendant to punish him for allegedly criminal conduct." *Id.* at 567.

Instead, to protect the requirement for a fair trial, safeguards are placed on the defendant's appearance. *See*, *e.g.*, *Estelle*, 425 U.S. at 504 ("Courts have, with few exceptions, determined that an accused should not be compelled to go to trial in prison or jail clothing because of the

possible impairment of the presumption so basic to the adversary system.") (footnote omitted). These safeguards are balanced, however, with the court's need "to protect the court and its processes, and to attend to the safety and security of those in the courtroom." *United States v. Nicholson*, 846 F.2d 277, 279 (5th Cir. 1988). Thus, the courts have been more liberal in allowing security personnel in and around the courtroom, including at the accused's side. *See Id*. (the presence of plainclothes deputies in front of the jury did not unfairly prejudice the defendant).

In *Holbrook*, the Supreme Court addressed the presence of security personnel in the courtroom and found that "the presence of guards at a defendant's trial need not be interpreted as a sign that he is particularly dangerous or culpable." The Court noted that "[o]ur society has become inured to the presence of armed guards in most public places; they are doubtless taken for granted so long as their numbers or weaponry do not suggest particular official concern or alarm." *Holbrook*, 475 U.S. at 569. The Court directed that, because security personnel are so common, consideration of the impact of the presence of guards must be addressed on a case-by-case basis. *Id*. The Court went on to find that the presence of officers at a trial was "intimately related to the State's legitimate interest in maintaining custody during the proceedings…" *Id*. at 571-72. The Court went on to note the limited authority of a federal court on review of a state court proceeding:

> All a federal court may do in such a situation is look at the scene presented to jurors and determine whether what they saw was so inherently prejudicial as to pose an unacceptable threat to defendant's right to a fair trial; if the challenged practice is not found inherently prejudicial and if the defendant fails to show actual prejudice, the inquiry is over.

*Id.* at 572.

In this case, as resolved by the state courts, there was no more than speculation that any of the jurors actually saw Williams being walked by guards to a secured area of the courthouse. The officer with the jury speculated that one, two, or maybe three of the jurors could have only briefly seen Williams walking towards the restricted access door with his escorts. Nevertheless, what the

juror's saw was exactly that; Williams walking in his plainclothes, without restraints, and without handcuffs.  He also was not being touched or handled by the deputies, who were simply walking with him.  There was only presumption that the jurors, if they saw him, knew what was behind the restricted access door and where it led.  This is not enough to establish the type of prejudice necessary to create a presumption of prejudice or impact the fairness of his trial.  *See United States v. Garcia*, 754 F.2d 460, 477 (7th Cir. 2014) (assuming jurors saw what happened, there was no prejudice when defendant claimed that the jurors saw him without shackles or prison clothes being escorted into the courtroom by marshals).

This occurrence does not capture or describe the type of potential for actual prejudice addressed by the Supreme Court in the foregoing precedent.  Williams cannot obtain habeas relief by forcing the expansion of Supreme Court law to his factual scenario.  *White*, 134 S. Ct. at 1706. In addition, he has presented nothing to demonstrate that the jury's verdict was impacted by the brief glance that some of them may or may not have had of him in the hallway.  Instead, the verdict appears to have been based on the more than sufficient evidence of his guilt which is discussed later in this opinion.

Williams has not established that this scene was actually or inherently prejudicial to impact the presumption of innocence.  The denial of relief on this issue was not contrary to, or an unreasonable application of, Supreme Court precedent.

**VII.  No Excessive Sentence (Claim No. 2)**

Williams claims that the habitual offender sentence he received was excessive because he was three weeks shy of his eighteenth birthday when this crime was committed and even younger when the predicate offense occurred.  He argues that the mechanical application of the habitual offender sentence of fifty-years without benefit of parole renders the sentence excessive.  The State

asserts that the claim cannot be reviewed for errors of state law and otherwise fails to state a basis for federal habeas relief.

Williams's appointed counsel asserted this claim on direct appeal. The Louisiana Fifth Circuit declined to consider the issue because Williams did not timely appeal the multiple offender proceeding and the sentence had already become final as imposed. Although he was advised that he could, Williams did not seek to reinstate his right to appeal the multiple offender sentence by a post-conviction application for an out-of-time appeal.

Williams was sentenced after trial to serve twenty-five years in prison on count two (attempted armed robbery) and fifty years in prison on each of counts three and four (armed robberies) to be served concurrently and without benefit of parole, probation, or suspension of sentence. Following the multiple bill proceeding, the Trial Court vacated the sentence on count three and resentenced Williams as a second felony offender to serve fifty years at hard labor without benefit of parole, probation, or suspension of sentence and the sentence was to run concurrently with the other sentences. Williams suggests that this sentence is excessive because of his age at the time and his age upon release after completion of the full habitual sentence.

To the extent Williams challenges the state courts' compliance with Louisiana's sentencing laws and the Louisiana Constitution, his claim is not the concern of federal habeas review. *Butler v. Cain*, 327 F. App'x 455, 457 (5th Cir. 2009). Instead, federal courts afford broad discretion to a state trial court's sentencing decision that falls within statutory limits. *Haynes v. Butler*, 825 F.2d 921, 923-24 (5th Cir. 1987); *See also*, *Turner v. Cain*, 199 F.3d 437, 1999 WL 1067559, at *3 (5th Cir. Oct. 15, 1999) (Table, text in Westlaw). As will be discussed, the habitual offender sentence imposed upon Williams was clearly within the state statutory limits and was not excessive.

The court first notes that Williams reliance on *Graham v. Florida*, 560 U.S. 48 (2010), is misplaced. In that case, the Supreme Court resolved that the Eighth Amendment precludes imposition of a life sentence without parole for non-homicide crimes upon juvenile offenders, who were defined as persons under eighteen years of age. *Id*., 560 U.S. at 74-75; *see also Miller v. Alabama*, 567 U.S. 460, __, 132 S. Ct. 2455, 2469 (2012) ("the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders.") Williams apparently was seventeen years old when he committed the instant offenses. However, he was not sentenced to life imprisonment either as a first offender or a second offender. The Supreme Court has not extended *Graham* to his particular situation. *See United States v. Watson*, 537 F. App'x 430, 437 (5th Cir. 2013) (holding that *Graham* does not apply to a discretionary sentence for a term of years).

In such cases, federal courts accord broad discretion to a state trial court's sentencing decision that falls within statutory limits. *Haynes*, 825 F.2d at 923-24; *see Turner*, 1999 WL 1067559, at *3 (because sentence was within Louisiana statutory limits and within trial court's discretion, petitioner failed to state cognizable habeas claim for excessive sentence); accord *Dennis v. Poppel*, 222 F.3d 1245, 1258 (10th Cir. 2000) (citing *Haynes*, 825 F.2d at 923-24). When a state sentence is within the statutory limits, a federal habeas court will not upset the terms of the sentence unless it is shown to be grossly disproportionate to the gravity of the offense. *See Harmelin v. Michigan*, 501 U.S. 957, 993-95 (1991); *Solem v. Helm*, 463 U.S. 277, 290-91 & n.17 (1983). "[W]hen a threshold comparison of the crime committed to the sentence imposed leads to an inference of 'gross disproportionality,'" a court then considers (a) the sentences imposed on other criminals in the same jurisdiction; and (b) the sentences imposed for commission of the same

offense in other jurisdictions. *Smallwood v. Johnson*, 73 F .3d 1343, 1346-47 (5th Cir. 1996); *McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992).

If the sentence is not "grossly disproportionate," in the first instance, the inquiry is finished. *United States v. Gonzales*, 121 F.3d 928 (5th Cir. 1997), *cert. denied*, 522 U.S. 1063 (1998). As the Supreme Court has noted, outside the context of capital punishment, successful proportionality challenges are "exceedingly rare," and constitutional violations are sustained in only "extreme" or "extraordinary" cases. *Ewing v. California*, 538 U.S. 11, 23-30 (2003) (citations omitted); *Lockyer v. Andrade*, 538 U.S. 63 (2003).

Williams was charged in count three with armed robbery under La. Rev. Stat. Ann. § 14:64(B), which states that a person convicted of the crime "shall be imprisoned at hard labor for not less than ten years and for not more than ninety-nine years, without benefit of parole, probation, or suspension of sentence." The Louisiana habitual offender law also provides in relevant part that, if a second felony is such that the offender would be punished for a first offense to imprisonment for a term less than his natural life, then the sentence for the second offense is to imprisonment for a term of not less than one-half the longest term and not more than twice the longest term proscribed for a first conviction. La. Rev. Stat. Ann. § 15:529.1(A)(1)(a). The sentence also must be imposed at hard labor without benefit of probation or suspension of sentence. La. Rev. Stat. Ann. § 15:529.1(G). Therefore, Williams enhanced sentence exposure for armed robbery as a second offender was to a term of forty-nine and one-half years to 198 years at hard labor without benefit of parole, probation, or suspension of sentence. *State v. Dunn*, 208 So.3d 954, 962 (La. App. 1st Cir. 2016) (second offender's exposure for armed robbery is forty-nine and one-half years to one hundred and ninety-eight years without benefit of parole, probation, or suspension of sentence); *State v. Toliver*, 205 So.3d 948, 958 (La. App. 1st Cir. 2016) (same).

Clearly, Williams's sentence of fifty years as a second offender for count three was at the low end of the potential sentencing range and only slightly above the mandatory minimum. In addition, under Louisiana law, the restriction on his parole eligibility was within the required limits based on the language in the underlying armed robbery statute which restricts parole. *See State v. Bruins*, 407 So.2d 685, 687 (La. 1981) ("An armed robber can be sentenced without benefit of parole under the habitual offender statute.") (citations omitted); *Dunn*, 208 So.3d at 962. Thus, Williams should only receive consideration of the proportionality of his sentence when compared with sentences imposed in similar cases.

In this case, Williams's sentence is not out of line with sentences imposed upon similarly situated defendants and significantly less than many. *State v. Dunn*, 208 So.3d at 954 (second offender sentenced to 60 years plus a 5 year weapon enhancement for armed robbery without benefit of parole, probation or suspension of sentence); *State v. Toliver*, 205 So.3d at 948 (second offender sentenced to 60 years at hard labor plus a 5 year weapon enhancement for armed robbery without benefit of parole, probation, or suspension of sentence.); *State v. Fuller*, 908 So.2d 45 (La. App. 5th Cir. 2008) (second offender sentenced to 98 years without benefit of parole, probation, or suspension of sentence for armed robbery); *State v. Freeman*, 770 So.2d 482 (La. App. 3rd Cir. 2000) (second offender sentenced to 98 years without benefit of parole, probation, or suspension sentence for two armed robberies of the same business); *see also*, *State v. Taylor*, 905 So.2d 451, 459-60 (La. App. 5th Cir. 2005) (19-year old first offender sentenced to concurrent 60 years sentences for two counts of armed robbery even though he personally did not discharge a weapon or injure the victim.).

Williams has not shown that his sentence was grossly disproportionate or unconstitutionally excessive under the circumstances of his case or in comparison with other similar cases in Louisiana. He is not entitled to relief on this claim.

**VIII.** **Sufficiency of the Evidence (Claim Nos. 3 and 4)**

In briefing this issue, Williams provides no more than a series or string of quotes related to the meaning of and legal terms associated with the concepts of reasonable doubt and sufficiency of the evidence. Under the broadest possible reading of his statements, Williams appears to assert in a conclusory fashion and without factual support that the State failed to meet its burden of proof beyond a reasonable doubt or provide sufficient evidence through William Ivy to identify him as the perpetrator.[34] The State avers that the evidence was sufficient to support the verdicts based on the findings by the state appellate court.

When he asserted these claims pro se in the state courts, he argued in a more coherent manner that the State failed to meet their burden or present sufficient evidence to establish his identity as a perpetrator in the robberies. The Louisiana Fifth Circuit found the claim to be without merit under *Jackson v. Virginia*, 443 U.S. 307 (1979) and related state case law. This was the last reasoned opinion on the issue. *See Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

Claims of insufficient evidence present a mixed question of law and fact. *Davila v. Davis*, No. 15-70013, 2016 WL 3171870, at *3 (5th Cir. May 26, 2016); *Maes v. Thomas*, 46 F.3d 979, 988 (10th Cir. 1995). The Court must therefore give deference to the state court's findings unless

---

[34]Rec. Doc. No. 1, p. 28.

the decision was contrary to, or involved an unreasonable application of Supreme Court law. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

The appropriate standard for determining the sufficiency of evidence is that set forth in *Jackson*, relied on by the state appellate court, which requires a court to determine whether, after viewing the record and the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008); *Williams v. Cain*, 408 F. App'x 817, 821 (5th Cir. 2011). Louisiana law allows for a crime to be proven by both direct and circumstantial evidence.[35]

The Court's consideration of the sufficiency of the evidence extends only to what was presented at trial. *See McDaniel v. Brown*, 558 U.S. 120, 131, 134 (2010) (recognizing that a reviewing court is to consider all of the trial evidence as a whole under *Jackson*); *Johnson v. Cain*, 347 F. App'x 89, 91 (5th Cir. 2009) (quoting *Jackson*, 443 U.S. at 324) (*Jackson* standard relies "upon the record evidence adduced at the trial."). The review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury. *United States v. Young*, 107

---

[35]Under Louisiana law, "[t]he rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. Rev. Stat. Ann. § 15:438. However, on federal habeas corpus review, the court does not apply this state law, "reasonable hypothesis" standard, and instead must apply the *Jackson* and AEDPA standards of review. *Gilley v. Collins*, 968 F.2d 465, 467 (5th Cir. 1992) (citing *Schrader v. Whitley*, 904 F.2d 282, 284 (5th Cir. 1990)). To the extent petitioner relies on Louisiana's circumstantial evidence rule itself, "[t]his is not a purely separate test from the *Jackson* standard to be applied instead of a sufficiency of the evidence test ... . Ultimately, all evidence, both direct and circumstantial, must be sufficient under *Jackson* to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt." *State v. Porretto*, 468 So.2d 1142, 1146 (La. 1985); *accord State v. Williams*, 693 So.2d 204, 209 (La. App. 4th Cir. 1997). The reasonable hypothesis standard under state law is "just an evidentiary guide for the jury. If a rational trier of fact reasonably rejects the defendant's hypothesis of innocence, that hypothesis fails." *State v. Maxie*, 614 So.2d 1318, 1321 (La. App. 3d Cir. 1993); *accord Williams*, 693 So.2d at 209. The appropriate standard for this Court on habeas review remains *Jackson*.

F. App'x 442, 443 (5th Cir. 2004) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993)); *see also Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts").  A reviewing federal habeas court, therefore, is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses for that of the fact-finder.  *Weeks v. Scott*, 55 F.3d 1059, 1062 (1995) (citing *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985)).  All credibility choices and conflicting inferences must be resolved in favor of the verdict.  *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).

In addition, "[t]he *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'"  *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting *Herrera v. Collins*, 506 U.S. 390, 402 (1993)).  Thus, to determine whether the commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law.  *Perez*, 529 F.3d at 594 (citing *Jackson*, 443 U.S. at 324 n.16).

Williams challenges the sufficiency of the evidence to prove that he was a perpetrator or principal in the armed robberies and attempted armed robbery.  In Louisiana, armed robbery is "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." La. Rev. Stat. Ann. § 14:64.  For an attempt of a crime like armed robbery, the "attempt" element is defined by La. Rev. Stat. Ann. § 14:27 which provides in pertinent part that "[a]ny person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object."

The "force or intimidation" in an armed robbery "may be applied at any time in the course of the crime in order to complete the offense." *State v. Walker*, 681 So.2d 1023, 1028 (La. App. 2d Cir. 1996). An armed robbery is committed "not only if the perpetrator uses force or intimidation to take possession of the property, but also if force or intimidation is used to retain possession immediately after the taking, or to carry away the property, or to facilitate escape." *State v. Meyers*, 620 So.2d 1160, 1163 (La. 1993) (finding that defendant committed a robbery when he used force or intimidation to retain possession of money he had just taken from a cash register).

A dangerous weapon is defined as "any gas, liquid or other substance or instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm." La. Rev. Stat. Ann. § 14:2(3). Louisiana law recognizes that a gun is a dangerous weapon. La. Rev. Stat. Ann. § 14:64(A); *State v. Thomas*, 13 So.3d 603, 606 (La. App. 5th Cir. 2009).

In addition, Louisiana law defines a "principal" to a crime as a person "concerned in the commission of a crime, whether present or absent and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime." La. Rev. Stat. Ann. § 14:24. Not all principals are automatically guilty of the same grade of an offense; a principal instead may be charged with and convicted of a higher or lower degree of the crime, depending on the mental element proved at trial. *State v. Tate*, 851 So.2d 921, 930 (La. 2003) (citing *State v. Brooks*, 505 So.2d 714, 717 (La. 1987)).

Furthermore, it is not enough that the defendant's accomplice had the requisite intent; the State must prove that the defendant had the required mental element for the specific crime charged. *Id.*, 851 So.2d at 930. Under Louisiana law, armed robbery is a general intent crime. *State v. Smith*, 23 So.3d 291, 297 (La. 2009). "General criminal intent is present whenever there is specific

intent, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act." La. Rev. Stat. Ann. § 14:10(2). In Louisiana law, general intent "is shown by the very doing of the acts which have been declared criminal." (citation omitted) *State v. Oliphant*, 113 So.3d 165, 172 (La. 2013).

Louisiana law deems attempted armed robbery to be a specific intent crime based on the definition of attempt in La. Rev. Stat. Ann. § 14:27. *State v. Amos*, 192 So.3d 822, 830 (La. App. 4th Cir. 2016). The phrase "specific intent" is defined as the state of mind in which the perpetrator "actively desired the prescribed criminal consequences to follow his act or failure to act." La. Rev. Stat. Ann. § 14:10(1). Under Louisiana law, intent need not be proven directly but may be inferred from the actions of the defendant and the circumstances surrounding those actions. *State v. Sharlhorne*, 554 So.2d 1317, 1321 (La. App. 1st Cir. 1989); *State v. Tate*, 851 So.2d 921, 930 (La. 2003) (citing *State v. Brooks*, 505 So.2d 714, 717 (La. 1987)).

In the instant case, Williams is not specifically contesting the sufficiency of the proof related to the essential statutory elements of the offenses, but rather challenges the sufficiency of the evidence to prove his identification as a perpetrator of the crimes. Under Louisiana law, in addition to proving the statutory elements of the charged offense at trial, the State is required to prove a defendant's identity as a perpetrator. *State v. Draughn*, 950 So.2d 583, 593 (La.); *State v. Thomas*, 192 So.3d 291, 303 (La. App. 5th Cir. 2016); *State v. Ingram*, 888 So.2d 923, 926 (La. App. 5th Cir. 2004). Where the key issue is identification, the State is required to negate any reasonable probability of misidentification. *Id.* However, a positive identification by only one witness is sufficient to support a conviction. *State v. Williams*, 3 So.3d 526, 529 (La. App. 5th Cir. 2008). A positive identification by a victim, as well as the victim's testimony alone, also is

sufficient identification evidence regarding the crime committed against that victim. *Holderfield v. Jones*, 903 F. Supp. 1011, 1017 (E.D. La. 1995) (citing *State v. Turner*, 591 So.2d 391 (La. App. 2d Cir. 1991)).

A review of the relevant evidence presented at trial was more than sufficient to establish, and Williams does not contest, that three young, black men approached William Ivy in his driveway.[36] As the three young men neared him, one went towards the street and one went towards another car in the yard and waived a gun at Ivy.[37] The third, taller young man approached Ivy with a gun in his hand and told Ivy "give me what you got."[38] When Ivy said he had nothing of value to give them, the young man moved the gun and asked again for what Ivy had.[39] Ivy again responded that he had nothing to give. The young men swung the gun at Ivy, and Ivy raised his hand to block it but was hit on the face and hand with the gun causing him to fall to one knee.[40] After this, Ivy's wife apparently looked out of the window and a neighbor's dog made noise.[41] Ivy then looked up to see the men running away. As he peered over the hood of his car, one of the three young men shot back at him.

Five days after the incident, Ivy selected Williams's picture from a photographic line-up and identified him as the young man who approached him in the driveway.[42] Ivy was "absolutely positive" when he identified Williams at trial as the young man who spoke to him and hit him with

---

[36]St. Rec. Vol. 2 of 10, Trial Transcript, pp. 32-33 (William Ivy), 4/19/11.

[37]*Id.*, at pp. 33, 34-35 (Ivy).

[38]*Id.*, at p. 34 (Ivy).

[39]*Id.*, at p. 37 (Ivy).

[40]*Id.*, at pp. 37, 40-41 (Ivy).

[41]*Id.*, at p. 41 (Ivy).

[42]*Id.*, at pp. 44, 119-20 (Ivy).

the gun.[43]  Ivy also gave a detailed description of the clothing and hair style worn by the two men

with guns, and he recalled Williams's facial features.[44]  He also deduced that Williams was the

person who shot back at him because Williams was the last to run away and had on the knit cap.[45]

When the co-defendant, Howard Clofer testified, he identified Williams as one of the two

men who held guns and attempted to rob Ivy.[46]  He also testified that Williams was present for the

robbery of the McAllister's but did not have a gun at that time.  Although his testimony was

wrought with inconsistencies and admitted fabrications, his initial statements to police and his

initial testimony was that Williams was present for and participated in both incidents with an intent

to share in whatever valuables they obtained from the victims.[47]

Don McAllister testified that he was approached by two of three young, black men, the

taller of which held a nickel-plated semi-automatic handgun and the other held a .38 revolver with

a dark, long barrel.[48]  The third man stayed about fifteen feet back and seemed to be the lookout.[49]

The taller one with the semi-automatic asked for McAllister's wallet, which McAllister gave him.[50]

He then asked for and took McAllister's cell phone.  The young man with the revolver then walked

closer, pointed the gun to McAllister's face, and suggested they take the car.[51]  McAllister gave

---

[43]*Id.*, at pp. 37-38, 116 (Ivy).

[44]*Id.*, at pp. 56-57, 88-89 (Ivy).

[45]*Id.*, at pp. 60-62 (Ivy).

[46]St. Rec. Vol. 3 of 10, Trial Transcript (continued), pp. 160-161 (Clofer), 4/19/11.

[47]*Id.*, at pp. 162-165 (Clofer).

[48]*Id.*, at pp. 244-45 (McAllister).

[49]*Id.*, at pp. 245, 248-49 (McAllister).

[50]*Id.*, at pp. 245-46 (McAllister).

[51]*Id.*, at p. 246 (McAllister).

them a set of keys, which turned out to be the wrong set, and asked that they let him get his wife

out the car. He walked to the car and the men followed. As McAllister asked his wife to get out,

one of the young men asked for her purse.[52] The McAllisters went inside their home. Mr.

McAllister watched out the door and Mrs. McAllister called 9-1-1.[53] He saw the taller man with

the silver gun get behind the wheel of the car and the other gunman got into the front passenger

seat.[54] The third man got into the backseat. When the car would not start, all three young men

exited the car and ran down the street.[55]

McAllister tentatively identified the first young man police caught as the lookout and was

positive he was not one of the two with the guns.[56] At trial, McAllister described the facial features

and body build of the lead gunman, which matched the description given by Ivy of Williams,

although he had not selected Williams's photograph in the lineup shown to him by police.[57] He

also stated that he recognized Williams and was 75% certain that Williams was one of the three

perpetrators.[58]

Detective Russell Varmall also testified that Ashton Chopin, the first to be arrested shortly

after the second robbery, provided them with the names of his two accomplices and made a

photographic identification.[59] The officers eventually arrested Clofer and a search of his bedroom

---

[52]*Id.*, at pp. 247-48 (McAllister).

[53]*Id.*, at p. 248 (McAllister).

[54]*Id.*, at pp. 253, 255 (McAllister).

[55]*Id.*, at p. 256 (McAllister).

[56]*Id.*, at pp. 257-58 (McAllister).

[57]*Id.*, at pp. 269-70 (McAllister).

[58]*Id.*, at p. 275 (McAllister).

[59]St. Rec. Vol. 3 of 10, Trial Transcript, pp. 39-40 (Varmall), 4/20/11; *see also*, *Id.*, at pp. 29, 31 (Deputy

closet turned up a .380 Lorcin semi-automatic handgun.[60] The casing found at the Ivy home matched the weapon recovered from Clofer's house.[61] Clofer gave two recorded statements to the police and made a photographic identification indicating Williams to be a participant in both the attempted and completed robberies.[62] He also told officers that Williams owned the pellet gun that was used in the robberies.[63]

The jury also heard the recorded statement given by Williams after his arrest to Detective Varmall in which he denied that he went with Clofer and Chopin to do the robberies but admitting that he did give Clofer his pellet gun.[64] The statement also contained numerous inconsistencies and changes in his recitation of the events before and after the robberies.

Thus, the evidence before the jury was sufficient to establish that Williams engaged in each of the robbery incidents and was identified as one of the three perpetrators, including the person who pointed a gun at Ivy and hit him with it during the first attempted armed robbery. *Holderfield*, 903 F. Supp. at 1017 (a victim's positive identification constitutes sufficient identification evidence); *Preacher v. Estelle*, 626 F.2d 1222, 1225 (5th Cir. 1980) (identification evidence sufficient where victim, who never identified anyone else as the perpetrator, positively identified defendant at the trial, gave the basis upon which she made the identification, and was subject to cross-examination). Williams's friends and co-defendants established his participation which

---

Drew Weidenbacher).

[60]*Id*., at pp. 41-42 (Varmall).

[61]*Id*., at pp. 42-43 (Varmall).

[62]*Id*., at pp. 44-45, 49-50 (Varmall).

[63]*Id*., at p. 80 (Varmall).

[64]*Id*., at pp. 73-76, 80-83, 84-85, 88-91, 94 (Varmall); St. Rec. Vol. 4 of 10, Trial Transcript (continued), pp. 95-96 (Varmall).

confirmed the tentative identification made by Mr. McAllister who described his assailant with the same physical description as Williams's features and clothing on the night of the robberies. The jury obviously found certain testimony and statements, including those identifying Williams as a perpetrator, to be more credible than others. The determination of the credibility of a witness is within the province of the jury and is not to be disturbed on habeas review. *Passman v. Blackburn*, 652 F.2d 559, 569 (5th Cir. 1981) (that the jury chose to believe a witness whose credibility was challenged is not a question of constitutional dimensions); *Holderfield*, 903 F. Supp. at 1018 (citing *United States v. Hatch*, 926 F.2d 387, 399 (5th Cir. 1991)) (The habeas court should defer to the jury's resolution of credibility determinations and justifiable inferences of fact.). The jury's resolve was reasonable and supported by the evidence and testimony.

For these reasons, Williams has failed to establish that the verdict was contrary to the law and evidence or that there was insufficient evidence under the *Jackson* standard to support the verdict against him. The state courts' denial of relief on these issues was not contrary to, or an unreasonable application of, Supreme Court law. Williams is not entitled to relief on these claims.

## IX.     Effective Assistance of Counsel (Claim Nos. 5, 6, and 7)

Williams claims that he was denied effective assistance of counsel at trial when his counsel failed to investigate, present a defense of actual innocence, move to sever the offenses, and move for reconsideration of his sentence. He also contends that his incarceration violates due process based on the ineffective assistance of counsel throughout the proceedings and the cumulative errors of counsel entitle him to relief. Williams also suggests that he was entitled to an evidentiary hearing on this issue, which the court has already addressed and found to be unwarranted.

The State argues that Williams has failed to point to a deficient performance by counsel or establish that the denial of relief on this issue was contrary to federal law.

Williams asserted these claims on post-conviction review and the state trial court denied relief under the standards set forth in *Strickland*, 466 U.S. at 688, and related state case law, finding that he failed to establish a deficient performance in or prejudice from his counsel's representation. The Louisiana Fifth Circuit agreed with the state trial court's finding that Williams failed to meet either of the *Strickland* prongs and the remaining claims of actual innocence and cumulative error were without merit. In the last reasoned opinion on the issues, the Louisiana Supreme Court also found that Williams failed to establish a claim under *Strickland* and adopted the reasons assigned by the state trial court, which were attached to the Court's opinion.

The Supreme Court's holding in *Strickland*, 466 U.S. at 668, relied upon by the state courts, is the appropriate standard for judging the performance of counsel. In *Strickland*, the Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom. *See Strickland*, 466 U.S. at 687. The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992). In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Amos v. Scott*, 61 F.3d 333, 348 (5th Cir. 1995).

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "The defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. The analysis of counsel's performance must take into account the reasonableness of counsel's

actions under prevailing professional norms and in light of all of the circumstances. *See Strickland*, 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009). The reviewing court must "judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *Harrington*, 562 U.S. at 104 (citing *Strickland*, 466 U.S. at 689). "[I]t is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell*, 535 U.S. at 702 (citing *Strickland*, 466 U.S. at 689). As a result, federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. *Strickland*, 466 U.S. at 689; *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004) (counsel's "'conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'") (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)); *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008).

In order to prove prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010). Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695). In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen*, 563 U.S. at 189 (quoting *Strickland*, 466 U.S. at. 694). This standard requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington*, 562 U.S. at 112. In making a determination as to whether prejudice occurred, courts must review the record

to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986). Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. *Miller*, 200 F.3d at 282 (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

On habeas review, the United States Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 105. The *Harrington* Court went on to recognize the high level of deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and §2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.*, at 105 (citations and quotation marks omitted).

Thus, scrutiny of counsel's performance under § 2254(d) therefore is "doubly deferential." *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009)). The federal courts must take a "highly deferential" look at counsel's performance under the *Strickland* standard through the "deferential lens of § 2254(d)." *Id.* (citing *Strickland*, 466 U.S. at 689, and quoting *Knowles*, 556 U.S. at 121 n.2).

### A.    No Critical Evidence to Investigate or Include at Trial

Williams claims that his counsel failed to adequately investigate the case and secure certain evidence for trial. The only specific references made by Williams are that counsel did not obtain

a copy of the 9-1-1 recordings of the victims' descriptions of the perpetrators and failed to subpoena the DNA samples taken from him. He claims that these things would have influenced the jury's verdict.

When a petitioner alleges a failure of his counsel to investigate, he "must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.'" *Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir. 1998) (citation omitted). In other words, a petitioner cannot show prejudice with respect to a claim that counsel failed to investigate without adducing what the investigation would have shown. *Diaz v. Quarterman*, 239 F. App'x 886, 890 (5th Cir. 2007) (citing *Strickland*, 466 U.S. at 696, in recognizing that some evidence is required to show that "the decision reached would reasonably likely have been different."). Instead, to prevail on such a claim, the petitioner must provide factual support as to what exculpatory evidence further investigation would have revealed. *See Moawad*, 143 F.3d at 948; *see also Brown v. Dretke*, 419 F.3d 365, 375 (5th Cir. 2005); *Davis v. Cain*, No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008) (order adopting Report and Recommendation).

Williams does not point to any exculpatory or beneficial information which further investigation would have revealed to counsel. As is clear from the record, Williams's counsel knew that the descriptions given by Ivy and the McAllisters were general descriptions of three young, black men and some of their clothing. Counsel did not need a copy of the 9-1-1 recordings to make this clear to the jury. In fact, counsel used this to his benefit in his questioning of the state's witnesses and in his closing remarks in an effort to show that there was no clear identification of Williams made by the victims or the ensuing officer.

Williams's counsel also used the "lack" of DNA connection with his client in an attempt to convince the jury that there was no physical link between Williams and the robbery scenes. As

noted by the state courts, and Williams's counsel in his closing argument, the State did not test Williams's DNA sample or compare it to any of the seized or stolen items. Williams's counsel used this and the alleged lack of identification information in an effort to convince the jury that Williams was not present and the State had nothing to prove that he was. Defense counsel's decision not to introduce certain evidence is a matter of trial strategy, and in light of the circumstances of this case, the decision was a reasonable strategy which is owed deference on collateral review. *Williams v. Cockrell*, 31 F. App'x 832 (5th Cir. 2002) (quoting *Williams v. Cain*, 125 F.3d 269, 278 (5th Cir. 1997)) ("'Failure to present [evidence does] not constitute 'deficient' performance within the meaning of *Strickland* if [counsel] could have concluded, for tactical reasons, that attempting to present such evidence would be unwise.'").

In addition, Williams has not established that presentation of DNA evidence or the 9-1-1 recordings would have altered the verdict. The jury already had significant testimony and argument before it establishing that there were no pretrial positive identifications and no physical, forensic evidence, other than the pellet gun, to link Williams to either crime scene. The fact that this defense theory was not successful does not render counsel's performance deficient or prejudicial. *See Martinez v. Dretke*, 99 F. App'x 538, 543 (5th Cir. 2004) ("Again, an unsuccessful strategy does not necessarily indicate constitutionally deficient counsel."). "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689 (citations omitted). Williams has provided no basis to undermine the deference due his counsel's trial decisions or that due the denial of relief by the state courts.

Williams has failed to establish that the state courts' denial of relief on this issue was contrary to or an unreasonable application of Supreme Court law. He is not entitled to relief.

### B.     <u>Actual Innocence</u>

Williams claims that his counsel erred in failing to put forth a defense of actual innocence in light of the fact that he is actually innocent. A review of the record could not be farther from the truth. As an initial matter, the Supreme Court does not recognize a free-standing claim of actual innocence for purposes of federal habeas review. *McQuiggin v. Perkins*, __ U.S. __, 133 S. Ct. 1924, 1931 (2013) (citing *Herrera*, 506 U.S. at 404-05). To that end, this Court need not consider the validity, *vel non*, of Williams's claim of actual innocence, nor is that the province of a federal habeas court. As noted previously, this Court does not sit to reevaluate a jury's verdict of guilty, only the sufficiency of the evidence to support that verdict.

Nevertheless, there is no factual support for Williams's claim that his counsel failed to adequately present a defense of actual innocence. The transcript is replete with efforts by Williams's counsel to attempt to establish that Williams was not present during the robberies and that the statements to the contrary were fabricated by Clofer and Chopin. His counsel presented testimony to establish that a third-person, another friend of Chopin's, was present at the robberies. His counsel took great strides to convince the jury that the State had no identification evidence or other physical/forensic evidence to link Williams to the crime scenes. Short of perhaps using the phrase "actual innocence," Williams's counsel did in fact present a defense of actual innocence. Again, the fact that the defense was unsuccessful does not render counsel ineffective. *Martinez*, 99 F. App'x at 543.

Williams failed to establish that the state courts' denial of relief on this issue was contrary to or an unreasonable application of Supreme Court law. He is not entitled to relief on this claim.

## C. Sever Charges

Williams complains that his counsel was ineffective when he failed to move to sever the charges before trial. However, he has failed to establish that his counsel had a legal basis to do so.

Louisiana law provides for the joinder of criminal charges in one bill of information or indictment where there are common circumstances:

> Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan; provided that the offenses joined must be triable by the same mode of trial.

La. Code Crim. P. art. 493.

In addition, La. Code Crim. P. art. 493.2 also permits joinder of criminal charges based on sentencing exposure:

> [O]ffenses in which punishment is necessarily confinement at hard labor may be charged in the same indictment or information with offenses in which the punishment may be confinement at hard labor, provided that the joined offenses are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

Louisiana law provides that the sentences for both armed robbery and attempted armed robbery be served at hard labor. La. Rev. Stat. Ann. § 14:64(B); La. Rev. Stat. Ann. § 14:27(D)(3).

In Louisiana, "the district attorney has entire charge and control of every criminal prosecution instituted or pending in his district, and determines whom, when, and how he shall prosecute." La. Code Crim. P. art. 61. The prosecutor's decision to join criminal charges in a bill of information is generally not subject to objection by the defense. *See State v. Brooks*, 541 So.2d 801, 810-11 (La.1989) (citing La. Code Crim. P. art. 61 as providing broad discretion to the district attorney in determining whether to  sever counts in an indictment); *State v. Burnett*, No.2007-KA-2523, 2008 WL 2064975, at *3-*4 (La. App. 1st Cir. 2008) (unpublished) (finding that the district

attorney has the discretion to prosecute offenses separately or in aggregate) (citing *State v. Joles*, 492 So.2d 490, 495 (La. 1986) (addressing joinder of theft counts)).  However, "[i]f it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or bill of information or by such joinder for trial together, the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires."  La. Code Crim. P. art. 495.1; *State v. Burks*, 905 So.2d 394, 399 (La. App. 5th Cir.2005).  A defendant claiming prejudice has a heavy burden to prove that severance of the charges is warranted.  *State v. Jones*, 33 So.3d 306, 325 (La. App. 5th Cir. 2010) (citing *Burks*, 905 So.2d at 399).

In Williams's case, the record discloses no requirement under state law that any count in the bill of information be severed and tried separately as a matter of Louisiana law.  Williams was charged with and eventually convicted of one count of attempted armed robbery and two counts of armed robbery, all of which were felonies appropriately brought in the same bill of information. Williams does not challenge the fact that each of the charges against him were of the same character (felonies), arose from a common activity, were triable by the same mode of trial, and could be charged in the same bill of information.  *See*, La. Code Crim. P. art. 782; *see also*, La. Rev. Stat. Ann. § 14:2 (a felony, under Louisiana law, "is any crime for which the offender may be sentenced to death or imprisonment at hard labor.").

Furthermore, under Louisiana law, "there is no prejudice and severance is not required if the facts of each offense are not complex, and there is little likelihood the jury will be confused by the evidence of more than one crime." *State v. Lewis*, 557 So.2d 980, 984 (La. App. 4th Cir. 1990). In determining whether joinder of two or more offenses would result in prejudice, the Louisiana courts consider the following factors:

> (1) whether the jury would be confused by the various counts; (2) whether the jury would be able to segregate the various charges and evidence; (3) whether the

defendant would be confounded in presenting his various defenses; (4) whether the crimes charged would be used by the jury to infer a criminal disposition; and (5) whether, considering the nature of the charges, the charging of several crimes would make the jury hostile.

*State v. Lewis*, 736 So.2d 1004, 1015 (La. App. 4th Cir. 1999).

Williams has not argued or established that the jury was impacted in any of the ways listed above. The evidence was presented in a manner to distinguish between the two crime scenes and the different victims. Neither Williams nor the record demonstrates that the jury was confused or made hostile by the various counts or the evidence. Having failed to make such a showing, Williams has not identified any error in the joinder of the charges against him that would have warranted objection by his counsel. His counsel's decision not to make a meritless objection does not constitute deficient or prejudicial performance. *See Green v. Johnson*, 160 F.3d 1029, 1037-38 (5th Cir. 1998) (failure to make a frivolous objection is not deficient performance below an objective level of reasonableness); *Wood v. Quarterman*, 503 F.3d 408, 413 (5th Cir. 2007) ("'[f]ailure to raise meritless objections is not ineffective lawyering; it is the very opposite.'") (quoting *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994)).

The state courts' denial of relief on this claim was not contrary to or an unreasonable application of *Strickland*. Williams is not entitled to relief on this claim.

### D.   Motion to Reconsider Sentence

Williams alleges that his counsel was ineffective for failure to file a motion to reconsider the sentence after the state trial court failed to give reasons for the sentence pursuant to La. Code Crim. P. art. 894.1. Williams's argument is conclusory, and he has failed to allege a legal basis for counsel to have filed a motion to reconsider on that ground.

The record reflects that, at the initial sentencing before the multiple offender proceeding, Williams's counsel moved for the Trial Court, when applying the factors under Article 894.1, to

consider the roles of the three young men and give Williams a minimum sentence.[65]   After

argument from the State, the Trial Court, relying on Article 894.1, detailed the emotional turmoil

suffered by the victims as a result of the actions of Williams and his cohorts and noted Williams's

prior conviction and continued violations of the law.[66]   Based on this, the Trial Court imposed the

initial sentences of 50 years in prison on each count of armed robbery and 25 years for attempted

armed robbery.   Following the multiple offender adjudication on November 18, 2011, the Trial

Court vacated the original sentence on count three, armed robbery, and imposed the same sentence

on Williams as a second felony offender.

At the time of the multiple offender sentence, Williams's counsel already knew that his

effort to obtain a minimum sentence based on the considerations under Article 894.1 had been

rejected by the Trial Court when Williams faced a sentencing range of 10 years to 99 years.   The

Trial Court at that time imposed the 50 year sentence, falling near the middle of that range.   As a

second offender, Williams's received another 50 year sentence which was only six months above

the minimum sentence of 49 ½ years under the applicable habitual offender statute.   Counsel was

aware that the Trial Court had already considered the emotional impact of the crimes on the victims

and Williams's continued criminal behavior as a basis for imposing the first sentence.   Armed with

this knowledge, there was no reason for counsel to move the Trial Court to reconsider the Article

894.1 factors or reconsider the sentence already imposed near the minimum of the range.   Counsel

was not ineffective in failing to pursue a motion he likely determined to be futile or meritless, and

which would not have been successful or changed the outcome of the sentencing chosen by the

Court.   *See Smith v. Puckett*, 907 F.2d 581, 585 n. 6 (5th Cir. 1990) ("Counsel is not deficient for,

---

[65]St. Rec. Vol. 4 of 10, Sentencing Transcript, p. 6, 5/9/11.

[66]*Id*., at p. 9-10.

and prejudice does not issue from, failure to raise a legally meritless claim."); *see also*, *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) (concluding that "counsel is not required to make futile motions or objections.").

The denial of relief on this issue was not contrary to or an unreasonable application of *Strickland*. Williams is not entitled to relief on this claim.

### E.    Cumulative Errors of Counsel

Williams next claims that he was prejudiced by the cumulative effect of the errors made by his counsel in advice to him, in preparing for trial, and in his actions throughout the trial and sentencing. The State argues that Williams has failed to present any constitutional error by counsel that would amount to cumulative error.

To evaluate such a claim, this Court must review the individual contentions of ineffective assistance, and if they are meritless, that result cannot be changed simply by asserting the same claims collectively. The Court has reviewed each of the alleged counsel errors asserted by Williams. For the reasons already assigned, none demonstrate an error in counsel's performance that could have caused any cumulative prejudicial effect. *See Turner v. Quarterman*, 481 F.3d 292, 301 (5th Cir. 2007) (citing *Derden v. McNeel*, 978 F.2d 1453, 1454 & 1461 (5th Cir.1992)) (meritless claims or claims that are not prejudicial cannot be cumulated regardless of the total number raised)). It is well settled that "ineffective assistance of counsel cannot be created from the accumulation of acceptable decisions and actions." *United States v. Hall*, 455 F.3d 508, 520 (5th Cir. 2006) (citing *Miller*, 200 F.3d at 286 n.6); *Sholes v. Cain*, 370 F. App'x 531, 535 (5th Cir. 2010). As the Fifth Circuit has noted with respect to analogous claims of cumulative error by counsel: "Twenty times zero equals zero." *Mullen v. Blackburn*, 808 F.2d 1143, 1147 (5th Cir. 1987).

To the extent Williams seeks to urge that any or all of his other claims of constitutional error, those other than by his counsel, were cumulatively prejudicial, he has failed to show he is entitled to relief. The United States Fifth Circuit has recognized that "although rare," "instances of cumulative trial errors may 'fit the Supreme Court's description of a denial of due process as 'the failure to observe that fundamental fairness essential to the very concept of justice.'" *Perez v. Dretke*, 172 F. App'x 76, 81-82 (5th Cir. 2006) (quoting *Derden*, 978 F.2d at 1457); *Allen v. Vannoy*, No. 14-70009, 2016 WL 4254375, at *20 (5th Cir. 2016). Under this doctrine, "federal habeas corpus relief may only be granted for cumulative errors in the conduct of a state trial where (1) the individual errors involved matters of constitutional dimension rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors 'so infected the entire trial that the resulting conviction violates due process.'" *Derden*, 978 F.2d at 1454 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). Errors will reach this level only if they are of a constitutional nature and not a mere violation of state law, and the error has "infused the trial with unfairness as to deny due process of law." *Id*. (quoting *Lisenba v. California*, 314 U.S. 219, 228 (1941)); *Perez*, 172 F. App'x at 82. As discussed herein, Williams has established no constitutional errors, so there is nothing to cumulate. *United States v. Valas*, 822 F.3d 228, 248 (5th Cir. 2016).

Williams has failed to establish that denial of relief on this issue, or any facet of his ineffective assistance of counsel claim, was contrary to, or an unreasonable application, of Supreme Court law, including but not limited to *Strickland*.

**X.** **Recommendation**

For the foregoing reasons, it is **RECOMMENDED** that Deairen Williams's petition for the issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[67]

New Orleans, Louisiana, this 11th day of April, 2017.

 

 

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[67]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.